# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COREY GLASSMAN, | CASE NO. 1:08-cv-01485-OWW-SKO PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED |
| v. | |
| JAMES YATES, et al., | (Doc. 27) |
| Defendants. | |

Plaintiff Corey Glassman ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Before the Court is Defendant Yates' ("Defendant") motion for summary judgment.

**I.   Background**

    **A.   Plaintiff's Claims**

This action proceeds on Plaintiff's complaint filed on October 2, 2008. (Doc. #1.) Plaintiff alleges he is a prisoner at Pleasant Valley State Prison ("PVSP") in Coalinga, California, at the time of the events relevant to this lawsuit. Plaintiff claims his First Amendment right to free speech was violated because PVSP officials prohibited inmates from possessing publications related to role-playing games, such as Dungeons and Dragons.

Specifically, Plaintiff alleges his copy of "The Forgotten Temple of Tharizdun" was confiscated by PVSP officials in the mailroom sometime around June 21, 2006. On June 27, 2006, Plaintiff received a notification informing him that the publication was banned because it violated Operational Procedure 59, § RR(14), which bans any materials containing "[c]oded messages or any

other item that may be deemed a threat to the safety or security of the prison." (Compl. for Decl. and Inj. Relief for Violation of First Amend. of the U.S. Const. ¶ 17, ECF No. 1.)

Plaintiff appealed the decision to confiscate his role-playing materials. Plaintiff was then told OP 59, § RR(5) banned "Magazines/Articles relating to Dungeons and Dragons, any other Trading/Collector cards or role playing games, or pogs." (Compl. ¶ 21, ECF No. 1.) At the second level of appeal, Plaintiff was told Dungeons and Dragons materials contain hidden messages or codes and prison officials would have to spend excessive amounts of time decoding the messages to safely allow them to be distributed in the prison. Plaintiff filed a Director's Level Appeal, which was denied on January 2, 2007.

Plaintiff filed this lawsuit seeking declaratory and injunctive relief. Plaintiff seeks an order declaring the prison regulations (Operational Procedure 59) to be an unconstitutional restriction on Plaintiff's First Amendment right to free speech. Plaintiff also seeks injunctive relief prohibiting prison officials from confiscating Plaintiff's role playing game materials. On April 1, 2009, the Court screened Plaintiff's complaint and determined that it stated cognizable claims against Defendant Yates, the warden of PVSP.[1]  (Doc. #9.)

### B. Defendant's Motion for Summary Judgment

Defendant argues that he is entitled to summary judgment on three grounds. First, Defendant contends he was not personally involved in the denial of Plaintiff's requested publication. Second, Defendant contends the regulations prohibiting Dungeons and Dragons materials are constitutional because they meet the four factors set forth in Turner v. Safley, 482 U.S. 78 (1987). Third, Defendant contends he is entitled to qualified immunity because his actions did not violate Plaintiff's constitutional rights and did not violate any clearly established law.

Defendant argues that he was not personally involved in the alleged deprivation of Plaintiff's First Amendment rights. Defendant contends his actions in denying of Plaintiff's second level grievance and overseeing the enactment of the Operational Procedure banning Plaintiff's Dungeons and Dragons materials are not sufficient to establish Defendant's participation in the alleged

---

[1] The Court dismissed Plaintiff's claims against the California Department of Corrections and Rehabilitation because Plaintiff's claims against the state agency are barred by the Eleventh Amendment.

2

constitutional violation. Defendant argues that his subordinate officers confiscated Plaintiff's materials and were responsible for the enforcement of the allegedly unconstitutional Operational Procedure.

Defendant also argues that Operational Procedure 59 is rationally related to the prison's legitimate penological interest in maintaining security. Defendant argues that role playing game materials such as Dungeons and Dragons publications contain violent imagery and coded language that can compromise the security of the prison. Defendant also argues that Plaintiff has alternative means of exercising his First Amendment rights because he is free to engage in other allowable games, reading material, or leisure activities while in prison. Additionally, Defendant contends that accommodation of Plaintiff's asserted First Amendment rights would severely burden limited prison resources because prison officials would be required to read and translate all role-playing game materials to ensure they did not contain violent imagery, which would involve translation of the any coded messages contained in the publications. Defendant further argues that there is no ready alternative to accommodate Plaintiff's requests and the prison's response was not over-exaggerated.

Defendant finally argues he is entitled to qualified immunity because his actions did not violate any constitutional right and did not violate any clearly established law, and cites to a Ninth Circuit case upholding prison regulations banning role-playing game literature.

## II. Discussion

### A. Summary Judgment Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(c)(2). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Entry of summary judgment is appropriate "against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. "A moving party without the ultimate burden of persuasion at trial-usually, but not always, a defendant-has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

///

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

### B. Defendant Has Met His Burden in Support of His Motion for Summary Judgment

Defendant argues that summary judgment is proper because 1) Plaintiff has failed to establish a sufficient causal connection between Defendant's action and the violation of Plaintiff's constitutional rights, 2) the regulations in question are constitutional because they meet the four Turner factors, and 3) Defendant is entitled to qualified immunity. The Court finds that Operational Procedure 59 is constitutional because it meets the four Turner factors and declines to address Defendant's alternative defenses.

"[A] prisoner inmate retains those First Amendment rights that are not inconsistent with his [or her] status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). "[T]he constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large. In the First Amendment context . . . some rights are simply inconsistent with the status of a prison or 'with the legitimate penological objectives of the corrections system.'" Shaw v. Murphy, 532 U.S. 223, 229 (2001) (quoting Pell, 417 U.S. at 822). A regulation that impinges on First Amendment rights "is valid if it is reasonably related to legitimate penological interests." Turner, 482 U.S. at 89. This standard requires a consideration of four factors: (1) whether there is a valid rational connection between the prison regulation and the legitimate and neutral governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right available to inmates; (3) what impact the accommodation of the asserted constitutional right would have on guards and other inmates; and (4) whether there are ready alternatives available to the prison for achieving the governmental objectives. Shaw, 532 U.S. at 229-30.

"The burden . . . is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." Overton v. Bazzetta, 539 U.S. 126, 132 (2003). The Court "must accord

5

1  substantial deference to the professional judgment of prison administrators, who bear a significant
2  responsibility for defining the legitimate goals of a corrections system and for determining the most
3  appropriate means to accomplish them." Id.

4        Defendant has carried his initial burden of producing evidence negating an essential element
5  of Plaintiff's First Amendment claim. Defendant has produced evidence showing that the challenged
6  regulation meets the first Turner factor because there is a valid, rational connection between the
7  regulation and legitimate penological interest of maintaining prison security. Specifically, Defendant
8  has submitted the declaration of Mailroom Sergeant D. Stone. Stone states that he is familiar with
9  the processing of publications related to role playing games such as Dungeons and Dragons. Stone
10 notes two characteristics of Dungeons and Dragons materials which threaten institutional security:
11 1) the characteristic that Dungeons and Dragons publications can contain violent imagery that could
12 influence a prisoner to carry out violent acts in the future, and 2) the characteristic that Dungeons
13 and Dragons publications contain coded language that could allow inmates to pass messages without
14 the knowledge of prison staff.

15       Defendant also cites several cases that address the dissemination of Dungeons and Dragons
16 materials in the prison setting. In Singer v. Raemisch, 593 F.3d 529 (7th Cir. 2010), the Seventh
17 Circuit affirmed the district court's grant of summary judgment against a prisoner challenging a
18 prison policy banning fantasy games. In Singer, prison officials presented evidence that Dungeons
19 and Dragons materials "can mimic the organization of gangs and lead to the actual development
20 thereof." Id. at 535. Prison officials also stated that "[Dungeons and Dragons] can 'foster an
21 inmate's obsession with escaping from the real life, correctional environment, fostering hostility,
22 violence and escape behavior,' which in turn 'can compromise not only the inmate's rehabilitation
23 and effects of positive programming but also endanger the public and jeopardize the safety and
24 security of the institution.'" Id.

25       Defendant also cites several cases that have recognized the dangerous influence Dungeons
26 and Dragons can have on its participants. See Meyer v. Branker, 506 F.3d 358, 370 (4th Cir. 2007)
27 (noting that defendant was obsessed with Dungeons and Dragons and that this obsession caused him
28 to retreat into a fantasy world of ninja warriors); Thompson v. Dixon, 987 F.2d 1038, 1039 (4th Cir.

1993) (affirming the conviction of one of two men who brought a Dungeons and Dragons adventure to life by entering the home of an elderly couple and assassinating them); Watters v. TSR, Inc., 904 F.2d 378, 380 (6th Cir. 1990) (describing a teenager who committed suicide as a devoted Dungeons and Dragons player who became absorbed by the game to the point of losing touch with reality).

In Bahrampour v. Lampert, 356 F.3d 969 (9th Cir 2004), the Ninth Circuit affirmed a district court's decision to grant summary judgment against a prisoner who challenged a prison regulation prohibiting the receipt of role playing material. The Court determined that the prison official defendants produced sufficient evidence to show a rational connection between role playing materials and detrimental behavior such as "the impact of simulated physical power used to obtain dominance over others, as opposed to reliance on legitimate authority, and the harmful behavior that can result in a prison, including gambling." Id. at 976. The prison official defendants submitted evidence that showed that role playing games often contain dice which could be utilized for gambling purposes. Id. at 973.

With respect to the second Turner factor, Defendant argues that Plaintiff has alternative means of exercising his First Amendment rights by engaging in other leisurely activities such as playing checkers, chess, and pinochle, or by reading fictional literature. With respect to the third Turner factor, Defendant argues that accommodation of Plaintiff's asserted rights would severely burden prison resources because it would require prison officials to have knowledge of the coded language contained in the Dungeons and Dragons materials and screen the content of the material to ensure it was appropriate in prison and did not contain violent imagery. Finally, with regard to the fourth Turner factor, Defendant argues that there is no ready alternative to the prison's ban on role playing materials because the proliferation of such materials could create a potential risk of violence in the prison, and a partial ban of only the most inappropriate role playing materials would require prison officials to screen every piece of role playing material and would adversely affect the efficient flow of mail in the prison.

**C.    Plaintiff Has Failed to Establish a Genuine Issue of Material Fact**

As Defendant has carried his burden of producing evidence to negate an essential element of Plaintiff's claim, the burden shifts to Plaintiff to establish that a genuine issue of material fact

exists as to whether Operational Procedure 59 is rationally related the prison's interest in maintaining institutional security.

Plaintiff attempts to establish the existence of a genuine issue of material fact by submitting an affidavit from David Weidert, another prisoner, who states he is unaware of any violent incidents related to Dungeons and Dragons. Weidert and Plaintiff claim that Dungeons and Dragons has beneficial effects on inmates, such as promoting unity among prisoners. Plaintiff also contends that Dungeons and Dragons materials do not contain coded messages or secretive language, or warfare and tactical strategies that could be applicable in the prison environment. Taking the evidence together, there is a disputed factual issue regarding whether Dungeons and Dragons materials contain coded messages. Defendant and Plaintiff have submitted competing declarations regarding whether the messages are indeed "coded." There is nothing else on the record to resolve whether this fact is true or not. However, regardless of whether Dungeons and Dragons materials contain coded messages, Defendant is entitled to summary judgment because the regulations are rationally related to a legitimate penological interest.

Defendant and Plaintiff have submitted declarations disputing whether the violent imagery in the game can encourage participants to carry out the violent acts depicted in the game. Defendant has submitted a declaration of a mailroom sergeant who contends the materials may lead to violence, while Plaintiff has submitted declarations that contend there have been no known incidents of violence related to Dungeons and Dragons materials. However, Plaintiff's anecdotal evidence is not sufficient to establish a genuine issue of material fact. The Court recognizes that Defendant's factual burden is particularly low. Defendant needs to show that the ban on Dungeons and Dragons materials is rational. Defendant does not have to show that the ban substantially furthers an important penological interest, or that the ban is the least restrictive means of furthering a compelling penological interest. Plaintiff is an incarcerated prisoner and is not entitled to First Amendment freedoms as extensive as those enjoyed by free persons. See Shaw, 532 U.S. at 229.

With that in mind, the Court notes that, even in light of the evidence submitted by Plaintiff, a trier of fact could only conclude that the regulation in question is rational. While Plaintiff contends that he "has provided a preponderance of evidence showing that, not only has the game

1  Dongeons[sic] and Dragons been present within the prison system for several years, but has
2  successfully demonstrated a long history of having <u>no</u> "risk of disorder." (Pl.'s Opp'n to Def.'s Mot.
3  for Summ. J. 5:4-7, ECF No. 37.) Plaintiff greatly overstates his evidentiary showing. Plaintiff has
4  only submitted declarations from himself and from another inmate stating that they are unaware of
5  any violent incidents caused by Dungeons and Dragons.[2]

6        The dispositive question is not whether Dungeons and Dragons material has led to violent behavior in the past. The question is whether prison officials are rational in their belief that Dungeons and Dragons could lead to violent behavior in the future. See Singer, 593 F.3d at 536. Defendant has submitted persuasive evidence in support of his belief that it is a threat to institutional security to provide inmates with game materials that could involve role playing violent or escapist scenarios. Defendant has identified numerous court decisions describing the detrimental effects of games like Dungeons and Dragons. While Plaintiff's anecdotal declarations may be sufficient to question the efficacy of the prohibition against Dungeons and Dragons materials, they do not seriously question the rationale behind the prohibition. The Court's role is not to question whether the prison regulation is necessary, is substantially effective, or is the least intrusive means of accomplishing the goal of preventing violence. The Court may only question whether the regulation is rational. Defendant has carried his burden and Plaintiff's evidence is not sufficient to persuade any rational trier of fact to conclude that the prohibition against Dungeons and Dragons material is not rationally related to a legitimate penological interest. Notably, Plaintiff has not produced any evidence invalidating the findings made in the court decisions cited by Defendant describing the adverse effects of Dungeons and Dragons. While it may be true that Plaintiff and his inmate witness are not personally aware of any violent incidents stemming from Dungeons and Dragons, the existence of evidence establishing a rational connection between Dungeons and Dragons and detrimental behavior is indisputable.

---

[2] Plaintiff also contends that Defendant Yates admitted in a response to a request from admissions that he was unaware of any acts of violence at PVSP attributed to articles on Dungeons and Dragons. (Pl.'s Opp'n 4:18-22, ECF No. 37.) However, Plaintiff has not attached Yates' admission to his opposition. Even if Plaintiff had properly presented this evidence to the Court, the admission is also anecdotal and is not sufficient to rebut Defendant's showing.

  Plaintiff's evidence also suggests that there are benefits from the use of Dungeons and Dragons in the prison setting. Plaintiff and his witness state that, in their experience, the use of Dungeons and Dragons has fostered unity between inmates of diverse racial backgrounds and provides a positive influence for inmates. However, as noted previously, it is not the Court's role to balance the benefits and costs of the regulations at issue. The Court's role is limited to determining whether there is a rational connection between the regulation and a legitimate penological interest.

  Finally, the Court notes that Plaintiff has failed to offer any arguments or evidence opposing Defendant's assertion with respect to the second, third, or fourth Turner factors. Plaintiff does not address whether there are alternative means of exercising his First Amendment rights, what impact the accommodation of Plaintiff's asserted right would have on guards or inmates, or whether the regulation is an exaggerated response to prison concerns and there are ready alternatives to accommodate Plaintiff's rights. In general, Defendant contends that Plaintiff has alternative means of exercising his asserted rights by playing other games permitted in the prison or by reading fantasy literature similar to the subject matter contained in the Dungeons and Dragons materials. Defendant contends that accommodation of Plaintiff's asserted right would have a substantial impact on the allocation of prison resources and would slow down the processing of mail in the prison because prison officials would have to read and screen all role playing materials to ensure the content is appropriate for the prison. Defendant also contends that the substantial impact on prison resources means there are no ready alternatives to accommodate Plaintiff's rights. Plaintiff has not substantially challenged Defendant's arguments on these factors. Accordingly, the Court finds that these three Turner factors weigh in Defendant's favor.

  Defendant has demonstrated that the regulations prohibiting Dungeons and Dragons materials at PVSP are rationally related to a legitimate penological interest, that there are alternative means for Plaintiff to exercise his First Amendment rights, that the impact of accommodating Plaintiff's rights would be great, and that there are no ready alternatives to accommodate Plaintiff's rights. Plaintiff's evidence fails to establish any genuine issue of material fact with respect to these elements of Plaintiff's claims. Accordingly, the Court will recommend that summary judgment be

granted in Defendant's favor.

### III. Conclusion and Recommendation

The Court finds that Plaintiff has failed to come forward with evidence seriously challenging Defendant's contention that the prohibition against Dungeons and Dragons materials is rationally related to legitimate security interests. Accordingly, the Court will recommend that Defendant's motion for summary judgment be granted. Since the Court finds that Defendant's are entitled to summary judgment on this ground, the Court declines to address Defendant's claim that they are entitled to qualified immunity.

Accordingly, it is HEREBY RECOMMENDED that Defendant's motion for summary judgment be GRANTED.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten (10) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   February 1, 2011**                                    /s/ Sheila K. Oberto
                                                                 UNITED STATES MAGISTRATE JUDGE